THE TOLUMA.
THE SUCARSECO.

WEST INDIA OIL CO. et al. v. SUTPHEN et al.

District Court, S. D. New York.
June 23, 1933.

Kirlin, Campbell, Hickox, Keating & Mc-Grann, of New York City (W. H. McGrann, of New York City, of counsel), for libelant Aktieselskabet Cuzco and steamship Toluma.

Bigham, Englar, Jones & Houston, of New York City (D. Roger Englar and Leonard J. Matteson, both of New York City, of counsel), for libelants West India Oil Co. and others.

White & Case, and Single & Single, all of New York City (Alonzo L. Tyler, of New York City, of counsel), for steamship Sucarseco, Submarine Boat Corporation, and its receivers.

PATTERSON, District Judge.

There was a collision at sea between the Toluma and the Sucarseco. The collision was due to the fault in navigation of the two vessels equally. Both were damaged, the Toluma so badly that the master determined to run to a port of refuge for repairs. Part of the cargo was unloaded, repairs made, and the cargo reloaded, after which the voyage was resumed. The repairs and incident expenses involved a large sum of money and were paid by the owner of the Toluma.

The bills of lading governing the carriage of the Toluma's cargo contained the customary Jason clause, to the effect that, in case of danger or disaster resulting from fault in navigation (the shipowner having exercised due diligence to make the ship seaworthy), the owners of cargo should contribute with the shipowner in general average to the payment of sacrifices, losses, or expenses of a general average nature incurred for the common benefit, to the same extent as if the danger or disaster had not arisen out of fault in navigation. Accordingly, on arrival at destination the cargo was subject to a lien for general average expenses and losses. A general aver-age statement was made, apportioning the expenses and losses between the shipowner and cargo owners, and under this statement the sum of $39,394.01 was charged against the cargo owners. Most of these parties have paid in their contributions. The only physical damage to cargo resulting from the collision was breakage due to handling in the course of repairing the ship, the amount of such damage being $2,956.89, which sum was allowed to cargo in the general average.

Three suits were brought in this court and were ordered consolidated for trial. The first is by the owner of the Toluma against the Sucarseco. The damages demanded include the full amount paid for repairs to the vessel, no deduction being made for the sums assessed against and collected from cargo owners in general average. The second is a cross-libel by the owner of the Sucarseco against the Toluma for damages sustained by the Sucarseco. The third is by owners of cargo on the Toluma against the owner of the Sucarseco, to recover the amounts paid by them as general average contributions. The facts referred to above have been stipulated as true.

The question is whether in a collision case, where both vessels were at fault, the cargo owner may recover from the noncarrying vessel, not merely the physical damage suffered by cargo, but also the amount which he has paid as contribution in general average to the carrying vessel, liability for such contribution having resulted from the presence of the "Jason clause" in the contract of affreightment.

It is settled that between two vessels equally at fault in a collision the damages will be divided in equal amounts. The North Star, 106 U. S. 17, 1 S. Ct. 41, 27 L. Ed. 91. It is also clear that for physical damage done to cargo the cargo owner may recover in full from the noncarrying vessel, The Atlas, 93 U. S. 302, 23 L. Ed. 863, and this notwithstanding that, as between the cargo owner and the carrier, the latter, though at fault in the collision, is not liable because of the Harter Act (46 USCA §§ 190–195). One-half of the amount so paid by the noncarrier to the cargo owner will be charged against the carrier in settling the controversy between them, thus indirectly making the carrier liable up to one-half the damage to cargo. The Chattahoochee, 173 U. S. 540, 19 S. Ct. 491, 43 L. Ed. 801. It is therefore clear in this case that those whose goods were damaged to the amount of $2,956.89 through breakage while the Toluma was being repaired may recover

the full amount directly from the Sucarseco, and the latter may pass on to the Toluma one-half of this amount.

Now as to the right of the cargo owner to recover from the noncarrying vessel what he has paid by way of general average. The liability of a cargo owner to contribute in general average toward sacrifices or losses suffered by the shipowner is comparable to the liability of an insurer of maritime risks. Where the damage to hull is caused solely by the fault of a stranger, the primary liability to make the loss good is on the stranger, and the liability of the cargo owner to the shipowner in general average is no more than secondary. These views were set forth in Pool Shipping Co. v. United States, 33 F. (2d) 275, 277, a collision case where the Circuit Court of Appeals of this circuit held that the owner of the innocent vessel might recover full damages from the owner of the vessel at fault, although part of the damages had already been collected by the former from owners of cargo under general average. The court added that recovery to the extent of any amount already contributed by the cargo owner would be for the latter's account.

■ Where a collision is brought about by negligent navigation of both vessels, there is no obligation on the cargo owner to contribute in general average to the sacrifices or losses of the carrier, in the absence of an express agreement to make contribution. The Irrawaddy, 171 U. S. 187, 18 S. Ct. 831, 43 L. Ed. 130; The Jason, 225 U. S. 32, 32 S. Ct. 560, 56 L. Ed. 969. With such an agreement, there is a liability on the cargo owner to contribute in general average, but that liability is still secondary. The primary responsibility is upon the other vessel for its proportionate share of the injury. If the cargo owner has made good to the carrier part of the loss incurred, the carrier on later recovery against the other vessel must account to the cargo owner for a proportionate amount when the damages have thus been diminished. See Ralli v. Societa Anonima (D. C.) 222 F. 994.

From these views it must follow that the cargo owner whose goods have not been injured, but who has paid contribution in general average toward making good the loss suffered by his carrier in a collision with another vessel in which both vessels were guilty of negligent navigation, has no direct right of action against the other vessel. His only basis of recovery against the other vessel is by subrogation to the right of the carrier.

It is argued that The Energia (C. C. A.) 66 F. 604, is opposed to this result. There the carrying vessel was solely at fault, and it was held that cargo owners who had contributed in general average might recover back what had been exacted from them. The case did not involve any of the questions presented here.

■ There is another aspect of the case that in my opinion suffices to defeat any direct recovery by the cargo owners against the Sucarseco for what they have paid in general average. As already pointed out, the law at large imposed no burden on them to contribute in general average, because the carrier was negligent. That burden fell upon them because of their agreement with the carrier that under the conditions which later developed they would contribute to make good losses of a general average nature, even though caused by the carrier's negligence. Their loss arose only because of their contract with the carrier. The fact that the Sucarseco injured the Toluma does not make it liable to persons who incurred losses because of contracts with the owner of the Toluma that were rendered burdensome because of the injury. In the eye of the law such damages are too remote. Robins v. Flint, 275 U. S. 303, 48 S. Ct. 134, 72 L. Ed. 290; The Federal No. 2 (C. C. A.) 21 F.(2d) 313; Mobile L. Insurance Co. v. Brame, 95 U. S. 754, 24 L. Ed. 580.

The result is that the cargo owners are entitled to recover from the Sucarseco the physical damage done to cargo; the Toluma is entitled to recover from the Sucarseco one-half the amount by which its damages exceeded those of the Sucarseco, the damages to the former to include items for which it was reimbursed in general average, and the damages to the latter to include the amount which it must pay to the cargo owners; and the cargo owners will be entitled to recover from the Toluma their proportionate part of one-half the damages allowed to the Toluma of a general average character. In case of disagreement as to the computations, the matter will be sent to a commissioner.