United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 4, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 04-30937

---

LCI SHIPHOLDINGS, INC., for itself and
as the successor-in-interest to FOREST LINES, INC.,

Plaintiff-Counter Defendant-Appellant,

versus

MULLER WEINGARTEN AG, ET AL.,

Defendants,

FRACHT FWO AG,

Defendant-Counter Claimant-Apellee

---

Appeal from the United States District Court for
the Eastern District of Louisiana
USDC No. 2:03-CV-1396-C

---

Before REAVLEY, HIGGINBOTHAM and GARZA, Circuit Judges.

PER CURIAM:[*]

We must consider whether a freight forwarder, who is found liable to an

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

insurance company in a German court, and satisfies that judgment, has a tort indemnity claim under general maritime law against a carrier. The district court did not directly address this issue, but assumed that the freight forwarder had a tort indemnity claim. Holding that under the facts of this case, the freight forwarder does not have a tort indemnity claim under general maritime law, we reverse and remand with instructions.

## I.

Muller Weingarten AG ("Muller") contracted to sell press lines to General Motors ("GM"). Fracht FWO AG ("Fracht"), a German freight forwarder,[1] contracted with Muller to arrange for the shipment and transportation of Muller's press lines to GM. Fracht booked passage for the shipment to the United States with Forest Lines, Inc. ("Forest Lines"), predecessor-in-interest to LCI Shipholdings, Inc. ("LCI"),[2] through Forest Lines' booking agent, Herfurth & Co. Shipping GmBH ("Herfurth"). Herfurth issued a datafreight receipt naming Muller as shipper and Forest Lines as carrier for the presses, which were damaged in transit.

---

[1] A freight forwarder "arranges for, coordinates, and facilitates cargo transport, but does not itself transport cargo." *Norfolk S. Ry. Co. v. Kirby*, 125 S.Ct. 385, 390 (2004).

[2] The carrier is interchangeably referred to as "Forest Lines" or "LCI."

Allianz Versicherungs AG ("Allianz"), an insurance company, provided coverage to Muller for the cargo damage and paid the claim. As subrogee of Muller, Allianz sued Fracht in German court, which found, after a trial, that Fracht was a fixed cost freight forwarder under its contract with Muller, and thus, liable to Allianz to the same extent as the actual carrier.[3] Thereafter, Fracht settled with Allianz.

Fracht brought the instant suit seeking indemnity against LCI for the amount it paid Allianz to settle the claim. Fracht claimed that after it satisfied the German court judgment by paying Allianz, it became vested with two separate and distinct causes of action: (1) a subrogation claim, and (2) a tort indemnity claim. Fracht admits that its subrogation claim is subject to the package limitation of the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 1304(5) as set forth in the datafreight receipt between LCI and Muller. This is so because the subrogee (Fracht) does not obtain redress in its own right but only as successor to the rights of the subrogor (Allianz and Muller). *In re Admiral Towing & Barge Co.*, 767 F.2d 243, 250 (5th

---

[3] The status of "fixed cost freight forwarder" is unique to German law and is not recognized in the United States. Under German law, the fixed cost freight forwarder performs services at a fixed rate, rather than for a percentage commission of the freight charged by the actual carrier. German law attributes to the fixed cost freight forwarder the liabilities of a carrier, rendering the fixed cost freight forwarder liable whenever the actual carrier would be liable.

Cir. 1985). Therefore, Fracht can obtain no greater rights than Allianz and Muller had, and LCI would be able to invoke the COGSA package limitation against Allianz and Muller. *Id.*

However, Fracht argues that its tort indemnity claim is not subject to the COGSA package limitation. LCI argues that Fracht's causes of action are identical and derive from the same source—legal subrogation of Allianz and Muller. Further, LCI contends that Fracht does not have a separate and independent tort indemnity claim under general maritime law. In granting Fracht's motion for summary judgment and denying LCI's motion for summary judgment, the district court held that LCI could not limit its liability under the COGSA package limitation and its datafreight receipt against Fracht's tort indemnity claim. However, before the district court could resolve this issue, it was required to first determine whether Fracht had a tort indemnity claim under general maritime law. It did not do so, but assumed that Fracht had a tort indemnity claim under general maritime law. We begin with that issue.

## II.

The availability of common law indemnity under general maritime law is limited. This Court has outlined three ways in which a valid tort indemnity claim may arise: (1) when there is an indemnitor and indemnitee relation and consequent

4

duty owed; (2) when there is a significant difference in the indemnitor and indemnitee's degree of conduct; and (3) when there is a difference in the character of the duties owed by the two to the injured party. *Cities Serv. Co. v. Lee-Vac, Ltd.,* 761 F.2d 238, 240 (5th Cir. 1985) (citing W. PROSSER, THE LAW OF TORTS § 51 (4th ed. 1971)). In addition, in limited circumstances, this Court has recognized a tort indemnity claim based on the warranty of workmanlike performance ("WWLP") implied in maritime contracts under *Ryan Stevedoring Co., Inc. v. Pan-Atlantic S.S. Corp.*, 350 U.S. 124, 76 S. Ct. 232, 100 L.Ed. 133 (1956). Fracht claims that the first and third types of tort indemnity, along with an implied WWLP are present in this case. We will address each in turn.

### A.

The first type of tort indemnity recognized in *Cities Service Co.* occurs when there is an indemnitor and indemnitee relation and consequent duty owed. The Supreme Court illustrated this example in *Federal Marine Terminals, Inc. v. Burnside Shipping Co., Ltd.*, 394 U.S. 404, 89 S. Ct. 1144, 22 L.Ed.2d 371 (1969). In *Burnside*, a stevedoring company brought an indemnity action against a shipowner to recover compensation that the stevedore was required to pay to the widow of a longshoreman injured by shipowner's negligence. The Court held that federal maritime law imposes on the shipowner a duty of care to longshoremen, and

5

thus, the shipowner's breach of its duty gave rise to a cause of action by the stevedore to recover payments made by the stevedore because of the shipowner's negligence. *Id.* at 416-17. In essence, the stevedoring company and the shipowner had a special relationship and, therefore, the shipowner owed the stevedoring company a duty of care not to injure any of its longshoremen.

The instant case does not involve a shipowner and stevedore, rather a shipowner and a freight forwarder, and further, there is no special relationship (or consequential duty owed therefrom) between Forest Lines, the shipowner and carrier, and Fracht, the freight forwarder, that can be compared to the shipowner's relationship with and duty owed to a stevedoring company. To the contrary, the damages claimed in this case arise from damage to Muller's cargo, and any duty breached by Forest Lines that could have caused the damage was a duty to Muller, the shipper, not to Fracht, the freight forwarder. Accordingly, *Burnside* does not provide a basis for finding tort indemnity in the present case.

B.

The third type of tort indemnity recognized in *Cities Service Co.* occurs when there is a difference in the character of duty owed to an injured third party. This is illustrated by *Savoie v. LaFourche Boat Rentals, Inc.*, 627 F.2d 722, 723-24 (5th Cir. 1980), wherein this Court held that where a seaman's employer is required to

6

make maintenance and cure payment to an innocent seaman, because the employer is bound to do so by the special duty imposed upon it by admiralty law when an innocent seaman is injured by a third party,[4] the otherwise innocent employer is entitled to indemnification from the negligent third party.

We find that Fracht's attempt to fit itself under the the this type of tort indemnity is misguided. Tort indemnity based on the indemnitee's special duty owed to the injured party is not proper in this case. The payment for which Fracht seeks indemnification does not arise out of some special duty it owed to Muller.

C.

Finally, Fracht argues that LCI owed it indemnity based upon a claimed breach of the WWLP. To the extend that WWLP as recognized in *Ryan Stevedoring Co.* still exists in this Circuit, it has been questioned, if not wholly displaced, as the appropriate model for indemnification of cargo damage. *Rockwell Int'l Corp. v. M/V Incotrans Spirit*, 998 F.2d 316, 319 (5th Cir. 1993) ("We

---

[4] "A seaman's right to maintenance and cure is implied in the employment contract between seaman and shipowner. It 'in no sense is predicated on the fault or negligence of the shipowner.' Thus, an owner of a vessel is almost automatically liable [for maintenance and cure]." *Brister v. A.W.I., Inc.*, 946 F.2d 350, 360 (5th Cir. 1991) (quoting *Aguilar v. Standard Oil Co. of New Jersey*, 318 U.S. 724, 730, 63 S. Ct. 930, 934, 87 L.Ed. 1107 (1943)) (internal citations omitted).

7

recognize that *Ryan* indemnification continues to exist, but are reluctant to expand it beyond the personal injury/seaworthiness context from which it arose.") (citation omitted); *Bosnor, S.A. de C.V. v. Tug L.A. Barrios*, 796 F.2d 776, 785-86 (5th Cir. 1986) (doubting continued vitality of the *Ryan* approach outside the personal injury context); *Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1167 (5th Cir. 1985) (same); *Gator Marine Serv. Towing, Inc. v. J. Ray McDermott & Co.*, 651 F.2d 1096, 1100 (5th Cir. 1981) (same).   Because this case is outside the personal injury/seaworthiness context, we find no basis for the application of the theory of breach of a WWLP.

### III.

It follows that the facts of the present case do not provide any basis for a tort indemnity claim.  Fracht's only cause of action is for subrogation, which is subject to the COGSA package limitation.  The district court's grant of Fracht's motion for summary judgment is reversed and this case is remanded with instructions to limit LCI's liability to Fracht in accordance with the COGSA package limitation.

REVERSED and REMANDED.